IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **REZA HAZELI,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )   **Civil Action No. CBD-15-1690** |
| | ) |
| **MEHRIRAN PUBLISHING CO., et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

### MEMORANDUM OPINION

Plaintiff Reza Hazeli submits before this Court his Motion for Summary Judgment ("the Motion") (ECF No. 25). Defendant Mehriran Publishing Company ("Mehriran Publishing") filed a response in Opposition to the Motion (EFC No. 31). Defendant Mansoureh Pirnia did not file a response to the Motion. Plaintiff filed a reply to Mehriran Publishing's opposition (ECF No. 33). The Court has reviewed the parties' submissions and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court DENIES the Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on June 10, 2015, alleging breach of contract against both Mehriran Publishing and Ms. Pirnia (collectively "Defendants"). Compl. ¶¶ 26-33. Plaintiff seeks relief under two contracts he entered into on February 29, 2013. One contract was entered into by Plaintiff and Defendants ("the First Agreement") for Ms. Pirnia "to write" and for Mehriran Publishing to "edit, print, publish, promote and sell" a biography about Nader Shah ("the Work"). ECF No. 34, p. 4-5. The other contract was entered into by Plaintiff and Mehriran Publishing for Plaintiff to "write" and Mehriran Publishing to "edit, print, publish,

1

promote and sell" a book about the history of alphabets ("the Second Agreement"). ECF No. 25-3, p. 5, 14.

The First Agreement provides that Mehriran Publishing and Ms. Pirnia "undertake to conduct any necessary interviews with the descendant family members and friends of NADER SHAH, to write the Work in accordance with competent industry and commercially marketable standards and deliver the work to [Plaintiff] for approval before 31 December 2014 . . .". ECF No. 34, p. 5. It states that Plaintiff would pay, in addition to any costs associated with the Work, $80,000 in three installments: (1) a first installment of $40,000 paid on the effective date of the First Agreement; (2) a second installment of $20,000 to be made within a month of the completion of certain work in accordance with the First Agreement to Plaintiff's "entire satisfaction"; and (3) a third installment of $20,000 to be made within a month of Plaintiff's approval of the completed work. *Id.* at 8.

The First Agreement includes two clauses that allow for Plaintiff to terminate the First Agreement in certain cases. The first, Clause 2.3, is located within Section 2 of the First Agreement and provides:

> If the [Defendants] fail to deliver the Work in accordance with clause 2.1 by 31 December 2014, [Plaintiff] may elect to terminate this agreement and get reimbursed for the First Retainer and Second Retainer made by [Plaintiff] under clause 5.1 . . . .

*Id*. at 6. Section 2 is titled "Form and delivery of the Work" and discusses the parties' responsibilities regarding the Work in its draft manuscript stage. *Id.* Clauses 2.1 through 2.5 address research and drafting, any co-authoring that Plaintiff may choose to do, and "corrections and/or modifications," including the timeline for "corrections and/or modifications" and revisions. *Id.* at 5-6.

The second clause providing for termination is Clause 3.6, which states:

> In case of disagreement between the parties on the Edition Work of clauses 3.1 to 3.4, [Plaintiff] reserves the right to terminate this agreement by paying [Mehriran Publishing] 50% of the actual cost so far incurred for the Edition Work, which in no case should exceed US $ 5000. The remaining of the First Retainer and Second Retainer previously paid to the Promising Parties must be reimbursed to the Work Owner.

*Id*. at 7.  Clause 3.6 is located in Section 3 of the First Agreement, titled "Editing, proof reading, and approval of the Work." *Id.* at 6.  Section 3 outlines the parties' responsibilities with regard to preparing the final "design, format and style" of the Work and "reviewing the Work for spelling, punctuation, typographical errors, and grammar[.]" *Id.* at 7.  The parties labeled the Work the "Edition Work" at this phase.  *Id.*

Termination language nearly identical to Clause 3.6 is included in the Second Agreement. ECF No. 25-3, p. 7.  This provision of the Second Agreement, also labeled Clause 3.6 and located in Section 3 discussing final editing and review, gave Plaintiff "the right to terminate" the Second Agreement "[i]n case of disagreement between the parties on the Edition Work[1] of clauses 3.1 to 3.4." *Id.*

Plaintiff exercised his right to terminate both the First Agreement and the Second Agreement under each respective Clause 3.6, alleging that the draft manuscript of the Work was "belatedly provided" by Defendants and "was deficient for a number of reasons." Pl.'s Mot. 2. According to Plaintiff, one "deficiency" of the draft manuscript was that it was 194 pages instead "of at least 324 pages." *Id.* at 3.  Additionally, Plaintiff was allegedly "not satisfied with the quality of the draft manuscript and Defendants did not satisfactory [sic] or timely work with [Plaintiff] to cure various errors that were identified in the draft manuscript." *Id.*  Plaintiff also claims that although he made $60,000 in payments as required under the First Agreement and "also paid in excess of $20,000 for costs associated" with the Work, Defendants demanded an

---

[1] The Edition Work referenced in the Second Agreement is the work on the history of languages in its final edition stages, not the Edition Work referenced in the First Agreement.

additional $60,000 to complete work required by the First Agreement. *Id.* As a result, Plaintiff "exercised his option under [Clause] 3.6" of the First Agreement and "provided notice of termination of the Agreement on February 19, 2015." *Id.* Plaintiff thus asserts that Defendants breached the First Agreement by submitting a draft manuscript that failed to conform to the terms of the First Agreement, requested additional compensation, and failed to return his payments as required by the First Agreement. *Id.*

Plaintiff also seeks to recover under the Second Agreement. He maintains that because of the alleged breach of the First Agreement, he and Mehrirar Publishing "had a disagreement with respect to the Edition Work contemplated in the Second Agreement." Pl.'s Mot. 8. Plaintiff claims that he exercised his right to terminate the Second Agreement under Clause 3.6, but Mehriran Publishing did not reimburse Plaintiff as Clause 3.6 required. *Id.*

In response to the Motion, Mehriran Publishing contends that summary judgment should not be granted in Plaintiff's favor for several reasons. First, Mehriran Publishing claims that it never received any proceeds pursuant the Agreement because Plaintiff made all payments to Ms. Pirnia. Def.'s Opp'n 6. Second, Mehriran Publishing's work was conditioned on Ms. Pirina's work, and because Ms. Pirnia "did not complete the tasks pursuant to the First Agreement[]," Mehriran Publishing's "responsibility . . . was frustrated." *Id.* Lastly, Mehriran Publishing opines that Plaintiff comes before the Court with "unclean hands." *Id.* at 7.

## DISCUSSION

### A. Standard of Review

The Court may grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). Here, Plaintiff fails to show that he is entitled to judgment as a matter of law

because the clause on which he relies to terminate the Agreement is not triggered by the alleged disagreements between the parties.

### B. Plaintiff is not entitled to relief under Clause 3.6 of the First Agreement.

Plaintiff relies on Clause 3.6 to support his right to terminate the First Agreement and his right to be reimbursed for the payments he has already made. Pl.'s Mot. 7. Clause 3.6 limits Plaintiff's authority to terminate the Agreement only to any "disagreement between the parties on the Edition Work *under clauses 3.1 to 3.4*[.]" ECF No. 34, p. 7 (emphasis added). Clauses 3.1 through 3.4 deal exclusively with the "Editing, proof reading and approval of the Work." *Id.* at 5. These clauses deal with the Work in the stages of final editing and reviewing. *Id.* Specifically, Clause 3.1 outlines the Defendants' roles in "editing" for presentation and design and "reviewing" for spelling and grammar; Clause 3.2 provides that Plaintiff has one month to review, propose corrections to, or modify the edits; Clause 3.3 provides that "[s]ubject to [Clause] 3.1, the [Defendants] must not make any alterations, eliminations or additions to the Work . . . without [Plaintiff]'s prior consent"; Clause 3.4 states that Mehriran Publishing has one month after Plaintiff's review per Clause 3.1 to provide a finalized version of the Work for approval; and Clause 3.5 provides that all amendments to the working draft of the Work shall be made electronically. *Id.*

Although Plaintiff declares that he had a disagreement with respect to the Work as defined in Clause 3.1 of the First Agreement, the alleged facts giving rise to the disagreement do not fall within the purview of Clause 3.1. The issues that Plaintiff identifies as his reasons for terminating the Agreement are: (1) the "deficiency of the draft manuscript . . . [that] was only 194 pages" when the Agreement "required the manuscript to be at least 324 pages"; and (2) Plaintiff "was not satisfied with the quality of the draft manuscript"; and (3) "[D]efendants did

not satisfactory [sic] or timely work with [Plaintiff] to cure various errors that were identified in the draft manuscript." Pl.'s Mot. 3.

The provisions of the First Agreement that apply to the Work in its draft manuscript format are covered by Section 2. ECF No. 34, p. 5-6. Clause 2.1 refers to "Schedule 1," located at the end of the First Agreement, which sets out the length of the Work as 324 pages. *Id.* at 5. No part of Section 3 makes reference to "Schedule 1" or the length of the Work. *Id.* at 6. Clause 2.1 is also the only provision of the First Agreement that specifies that the writing of the Work must be "in accordance with competent industry and commercially marketable standards." *Id.* Thus, Plaintiff's "disagreement" over the page length of the Work and "the quality of the manuscript" are covered by provisions within Section 2 of the First Agreement. Similarly, Clause 2.4 discusses the process by which the parties are to identify and change errors in the draft. *Id.* Plaintiff's issues with Defendant's failure "to cure various errors" in the draft manuscript of the work therefore are covered by Clause 2.4 of the First Agreement. Accordingly, while disagreements between the parties may have existed, they did not fall under Clauses 3.1 to 3.4 of the First Agreement, but rather under Clauses 2.1 through 2.5. Because Clause 3.6 only gives Plaintiff the authority to terminate the First Agreement in case of a dispute arising from Clauses 3.1 to 3.6, Plaintiff cannot invoke his right to terminate the First Agreement under Clause 3.6 for the issues he is alleging here.[2]

**C. Plaintiff does not allege sufficient facts for relief under the Second Agreement.**

Plaintiff invokes his right to terminate the Second Agreement under Clause 3.6 of the Second Agreement. In the Motion, Plaintiff alleges:

> In view of the dispute between the parties with respect to the First Agreement, [Plaintiff] had a disagreement with respect to the Edition Work contemplated in

---

[2] Arguably, Plaintiff may have the right to terminate the Agreement pursuant Clause 2.3, *supra*. However, he did not make that argument before the Court, and the Court will not make that argument for Plaintiff.

the Second Agreement and exercised his right to terminate the agreement on February 29, 2015.

Pl.'s Mot. 8.  Plaintiff, however, fails to provide the Court with any facts that indicate how the disagreements under the First Agreement relate to the Second Agreement.  Without any factual support or additional allegations, Plaintiff leaves the Court to assume that the alleged dispute for relief under the Second Agreement is Mehriran Publishing and Plaintiff's now soured relationship as a result of the disputes under the First Agreement.  This is not enough to constitute a breach of contract.  Furthermore, for relief under Clause 3.6 of the Second Agreement, the disagreement must also be about the contemplated work in its final edition stage, as provided by Clauses 3.1 to 3.5 of the Second Agreement.  ECF No. 25-3, p. 7.  Plaintiff is therefore not entitled to relief under the Second Agreement due to insufficient pleadings of fact in the Motion.

### D.  Mehriran Publishing's arguments are not persuasive.

Although the Court is denying the Motion, it will also address Mehriran Publishing's arguments in opposition and explain why it does not find them persuasive.  First, any alleged factual disputes put forth by Mehriran Publishing are unsupported by any evidence on the record. While Mehriran Publishing maintains that the deficiencies in the draft manuscript of the Work were a result of Plaintiff's failure to communicate with Ms. Pirnia, Mehriran Publishing provides no affidavits, declarations, or documents to support those allegations.  In a summary judgment dispute, Rule 56(c) requires:

> **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** Citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>   **(B)** Showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  Without evidence supporting the statements asserted in a motion for summary judgment, the Court cannot afford weight to the alleged statements.

Second, Mehriran Publishing labels Plaintiff's alleged failure to correspond with Ms. Pirnia as "Plaintiff [coming] to this Court with [u]nclean [h]ands."  Def.'s Opp'n 7.  The unclean hands doctrine "bars a party from receiving equitable relief because of that party's own inequitable conduct."  *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000) (citation omitted).  "The Fourth Circuit has made clear that in order to use the unclean hands defense, Defendants must show they were injured by Plaintiff's conduct."  *Pediamed Pharm., Inc. v. Breckenridge Pharm.*, Inc., 419 F. Supp. 2d 715, 728 (D. Md. 2006).  Mehriran Publishing alleges that Plaintiff's unclean hands are a result of his "refus[al] to fulfill the agreed terms in assisting [Ms.] Pirniain co-authoring, corrections and/or modifications of the work as agreed."  Def.'s Opp'n 8.  However, the only language the Agreement contains as to any collaboration between Ms. Pirnia and Plaintiff was conditional:

>   [Plaintiff] reserves the right to decide at his own and sole discretion to participate in co-authoring a part of the Work.  In this case, [Ms. Pirina] must discuss in good faith with [Plaintiff] the modalities of dividing up the work between them.

ECF No. 34, p. 6.  Mehrirarn Publishing provides no evidence that this portion of the Agreement was activated and that Plaintiff did indeed have a responsibility to Ms. Pirnia to co-author or make corrections as agreed.  Thus, the unclean hands doctrine does not apply.

## **CONCLUSION**

Based on the foregoing, the Court DENIES the Motion.


December 13, 2016                                                              /s/
                                                                    Charles B. Day
                                                                    United States Magistrate Judge



CBD/xl